# CHARLESTON.

J. F. ROTHWELL *et al.* v. SUMMIT COAL COMPANY.
(No. 5054.)
Submitted January 27, 1925.    Decided February 10, 1925.

1. CONTRACTS—*On Change of Original Location for Constructing Railroad Grade, and Promise of Owner to Treat Contractor Right, Contractor Can Recover What Work on Changed Location is Reasonably Worth.*

   Where by an oral contract plaintiff agrees to construct for defendant a railroad grade, at a specified price per cubic yard, and afterwards the location of a part of the grade is changed at the request of defendant and by consent of the parties, and it appears that the cost of grading on the new location will be greatly increased, though no price for the work on the changed location is agreed upon between the parties, but the owner promises to treat the contractor right and directs him to proceed with the work, plaintiff will be entitled to recover what the work on the changed location is reasonably worth.   (p. 183).
   (Contracts, 13 C. J. § 587.)

2. APPEAL AND ERROR—*Judgment, Based on Verdict Seeming Equitable, Will Not Be Reversed on Appeal for Harmless Error in Introduction of Evidence.*

   Where, in such case, after the work is fully completed, the contractor sues for the balance due him, and it does not appear from the evidence what the work on the new location disconnected from the part of the grade not changed is rea-

sonably worth, and both parties introduce evidence as to what is a reasonable price per yard for all the work done, and the case is submitted to the jury on that theory and on instructions embodying the law thereon, and the jury returns a verdict for plaintiff, which on conflicting evidence seems equitable and right, the judgment thereon will not be reversed here for harmless error in the introduction of evidence.    (p. 184).

(Appeal and Error, 4 C. J. § 2966.)

(NOTE:    Parenthetical references by Editors, C. J.—Cyc.    Not part of syllabi.)

Error to Circuit Court, Raleigh County.

Action by J. F. Rothwell and others against the Summit Coal Company.   Judgment for plaintiffs, and defendant brings error.

*Affirmed.*

*C. M. Ward, C. C. Sanders* and *Jno. Q. Hutchinson,* for plaintiff in error.

*Ashworth & Ashworth,* for defendants in error.

MILLER, JUDGE:

Plaintiffs brought this action in assumpsit, on the common counts alone, for the balance alleged to be due them for excavating and grading a railroad for the defendant company. It is conceded that by the original parol contract between the parties, plaintiff Rothwell agreed to do the work for the price of eighty-five cents per cubic yard.   Plaintiffs now contend that because of a material change in the location of the grade, made by defendant, they are entitled to additional compensation for the work performed, and now completed. By their bill of particulars, they claim compensation for excavating 4,894 cubic yards, at $1.52 per yard, less credits on their account with defendant.   Defendant filed its statement of set-off, which agrees with plaintiffs' credits in their bill of particulars, except that plaintiffs are charged with one additional item:   ''10 cars extra ballast required to surface side track on account of improper finishing of sub-grade and not according to contract at $1.19, $1,190.00.''

The case was tried on the issue of defendant's plea of non-assumpsit, resulting in a verdict and judgment in favor of

plaintiffs for $2,178.59, or $1,556.61 less than plaintiffs' demand.

From the evidence it appears that some six weeks before the work of excavating was begun, plaintiff Rothwell and Dr. E. L. Ellison, president of the defendant company, went over the ground where the work was to be done; and at that time Rothwell offered to do the work for 85 cents per cubic yard; and that defendant accepted the offer. Rothwell testifies that when plaintiffs were ready to commence excavating, after some delay due to trouble in securing machinery, the change in location of the grade was pointed out to him by Mr. Larew, defendant's engineer, and Dr. Ellison, and that he told them he could not do that at all, that it would ruin him. And he says that Dr. Ellison answered: "You go ahead here and get this thing done for us. We will treat you right about it." When asked if he told Rothwell he would treat him right, Ellison, on the trial, answered: "I don't think so. Of course we are going to treat him right, far as that is concerned. * * * I don't recall in that respect. Might have been. I wouldn't be positive about it." But it appears that no price was discussed by the parties respecting the changed location. Rothwell testifies that a number of times during the progress of the work, he complained or "remonstrated" to Dr. Ellison about the extra labor required to excavate and fill along the changed location, and that the latter repeatedly promised to treat him right. Nowhere does Dr. Ellison directly deny that he promised Rothwell that he would treat plaintiffs right. We think the jury were justified in finding from the evidence that it was understood that plaintiffs were to have reasonable compensation for the extra work.

It is submitted that the trial court erred in giving to the jury plaintiffs' instruction number one, as follows: "The court instructs the jury that if you believe from a preponderance of the evidence in this case that E. L. Ellison acting for defendant told one of the plaintiffs, J. F. Rothwell, that he would 'treat him right' after Rothwell had remonstrated that a change in the place of the grading to be done would be more difficult to do, and that the plaintiffs relied on said

statement as an agreement to pay what the yardage in the new grade was reasonably worth, then the statement of the defendant to 'treat plaintiffs right' constituted a revision of the contract between the parties as to price and the plaintiffs are entitled to recover a reasonable amount for each cubic yard of excavation done by them, taking into consideration the weather conditions under which the work was done, after deducting all proper payments and counter-claims unless the latter exceed the former in amount, in which case you should find for the defendant.''

It is said of this instruction that it told the jury that Rothwell had ''remonstrated that a change in the place of the grading to be done would be more difficult to do.'' The instruction left it to the jury to determine what each of the parties said, if anything. Besides, it made no difference what Rothwell said, if Ellison told him he would treat him right in regard to the change in location of the grade.

Defendant contends that the three words ''treat him right'' are too short, vague and indefinite a statement to constitute a contract. Before the instruction was read to the jury, they had heard all the evidence on this question and could not have been misled by the use of this phrase.

Further, it is said the instruction is erroneous in telling the jury in effect, that in passing on what the yardage was worth, they should take into consideration the weather conditions under which the work was done. This whole instruction related to the change in location, and it is evident that this part of the instruction was based on the evidence that the new location ran along the course of a creek, which had to be changed several times during the progress of the work, and that the work was done in mid-winter, when the creek was a greater obstacle, than at other times in the year. It was not the weather alone that increased the cost of the work, but filling the grade in the creek bottom at a time when the water interfered with the work. Plaintiffs testified that the weather conditions would not have interfered seriously with the work if done on the original route.

Defendant now argues that plaintiff should have been required to confine their evidence to what would be a reason-

able compensation for extra work done by reason of the change in location of the grade, if in fact a greater expense was actually incurred by the change; and that it was error to permit them to base their demand of $1.52 per yard on the actual cost to them for all the work performed on the whole grade. It appears from the evidence that the part of the grade changed constituted about 900 feet of the 2,800 feet actually graded; and the evidence tends to show that the new location was along a creek bottom, necessitating a great deal of filling, for which some of the earth used had to be "borrowed" from adjoining land, and that the earth excavated from the part of the original location not changed had to be moved farther than if the original location had been adhered to. It is true that plaintiffs' evidence went to the value of the whole contract; but defendant introduced evidence to prove what was a fair price per cubic yard for all the work done. And in addition to the items in its statement of set-off, defendant introduced evidence of other claims against plaintiffs for damages to its property and for removing earth from its roadway and around its stables, which it claimed was negligently placed there by plaintiffs.

Defendant's engineer testified that in his opinion a fair price per cubic yard for the work done, with proper equipment, proper management, and proper prosecution of the work, at the time it was done, would be $1.25 per yard. Plaintiffs' witness Cheesbrue, a civil engineer, with twenty-one years' experience in contracting and supervising highway construction, estimated a fair price for the whole job at $1.65. From the character of the evidence offered by both parties, the theory on which the case was tried seems to have been: What was a fair price for the work done by plaintiffs.

The change in location made by defendant was a very substantial one, almost one-third of the total length of the grade. No evidence was introduced by either party to aid the jury in determining what relation the changed location bore to the one first pointed out to Rothwell, either as to the amount of labor expended, or as to the character of work done on the new location, compared with what would have been necessary on the original location, or what a fair price

per yard would be in either case. On the trial, both parties. evidently adopted the theory that the case should be tried on the basis of a fair price for the work actually done by plaintiffs.

We think that by introducing evidence on the question of a fair price for the whole contract, fully performed by plaintiffs, defendant- can not now complain of the evidence introduced by plaintiffs on the same subject. A party will not be heard to complain, in the appellate court, of evidence introduced by his adversary on the trial, where he himself has introduced the same or similar evidence on the same point. Enc. Dig. Va. & W. Va. Rep., 1 Cum. Sup. 372, and cases cited.

We think there was a fair trial on the whole case, on the theory on which it was presented to the court and jury. How far the parties modified or revised the original verbal contract, was a mixed question of fact and law, to be determined by the jury, from the evidence introduced by the parties themselves and the instructions given at the instance of both parties. That plaintiffs were entitled to a verdict seems clear, and the amount has been determined by the jury. Seeing no substantial error in the trial of the case, we are disposed to affirm the judgment.

*Affirmed.*